Case No. 24-5730, Rebecca Edwards v. Shelby County, TN Arguments not to exceed 15 minutes per side Mr. Whitwell, you may proceed for the appellate Good afternoon, Your Honors, and may it please the Court My name is Lee Whitwell and I represent Shelby County, TN I've requested 3 minutes for rebuttal We urge the Court to reverse the District Court and find that Plaintiff Rebecca Edwards did not make out claims that should have ever gone to the jury under ADA theories of discrimination, retaliation or a failure to accommodate for 3 reasons First, her purported night blindness is not a disability under the Americans with Disabilities Act Second, her request for an accommodation based on her night blindness was not made in good faith Third, and finally, and somewhat separately her alleged disability based on asthma was not a disability under the Americans with Disabilities Act Is it your position that night blindness could never be a disability under the ADA? No, Your Honor, not that it could never be a disability I think the cases that the District Court cited and that the appellee rely on talk in terms of a disability prevents a major life activity such as seeing and so if a person who has night blindness to such a degree that they cannot see at night at all it is possible that under those circumstances they can't perform the major life activity of seeing and therefore they are disabled What case would you rely on for saying that it has to be so extreme that they can't see at all? I think I would rely sort of on the inference in the Capabankio case which is a Second Circuit case that the District Court relied on where they talked about this person needed he needed more than 100 times as much light as a normal person to be able to see But compare it to somebody who has difficulty walking Could you have a disability if you find it hard to walk so you can't walk more than a few steps without stopping There the example in contrast to yours where they can walk they can walk a couple steps and then they stop and then they can walk a couple steps Wouldn't those kind of situations be a disability under the ADAA? Well, I mean certainly the statute also defines walking as a major life activity To your Honor's point I understand it's really a question of degrees and the language in determining to what degree something has to substantially limit a major life activity that the District Court relied on that we think still applies is that a limitation has to be more than moderate or intermittent and so if something is just moderate or intermittent then that's not a disability Here for instance she testified Why isn't that just a jury question? I mean, so she testifies that it, you know this is my condition and then you can argue to the jury well that's not severe enough and the jury gets instructed and the jury says that's a disability So why is that? Why are we here? I think it's a question of law which this Court I think the Court applied it as a question of law in what is really our key case here the Wade v. General Motors opinion In Wade v. General Motors albeit an unpublished opinion but an opinion from this Court the Court affirmed a grant of summary judgment saying that as a matter of law this person's the two phrases that the Court used in that case that really stuck out to me were the inability to drive in darkness and seeing in the dark those were the things that the opinion said that that plaintiff could not do but still as a matter of law the Wade Court said this doesn't amount to a disability Was that case decided before the amendments? It was, Your Honor In fairness, I think most of the cases that we're talking about were decided before the amendments The Capobanco case, the Caldwell case the cases that the District Court relied upon and that Apelli relies on here are mostly pre-amendment and admittedly, obviously the standard is a little bit different under the amendment but courts have recognized that there is still a standard A plaintiff still has to show a substantial limitation on a major life activity and one of the things there's a lower court opinion that we cited out of the Northern District of Illinois I think Murray v. McDonald, if I'm not mistaken that was talking about whether driving is a major life activity and in that case the Court said it's worth noting that when the ADA was amended Congress didn't change this list of major life activities to include driving The Wade opinion had been issued All these other opinions talking about whether driving is a major life activity had been issued when those amendments happened Was this case tried as a driving case or as a seeing case? At the end of the day the record in the transcript shows to me that this was purely and simply a case about whether she could drive Now, the plaintiff gave some testimony she was questioned about to what extent she also could not see at night The closest thing that she said the closest she ever came unlike the plaintiff in Capabanquio who needed 100 times the amount of light of a normal person to see at night she said, the plaintiff here said that if she walks into a well-lit heavy room I'm assuming she meant well-lit, heavily lit room she said it takes a minute for her eyes to adjust Using the logic from the Wade opinion I think what the Wade opinion found is that if that degree if inability to drive at night is a disability then most people over the age of 45 are disabled We would submit that that same logic applies here that if walking into a brightly lit room from darkness and then needing, quote a minute for your eyes to adjust makes a person disabled then just like what Wade said But I thought that she was arguing to the jury that she couldn't drive because she couldn't see while she was in the dark of the driving situation So how long it would take her to adjust to get into a room would not necessarily be the problem The problem is how is she seeing in the darkness and I thought that she complained that there were halos and that she really didn't feel that she could see well enough to be safe when she was in the nighttime situation that one is in while one is driving She testified that she didn't feel safe She never said that she had difficulty seeing in the dark She never said that her eyes just don't finally adjust the way that others do But I thought she said that when she was driving for some of these work things she was following the sheriff's deputy's car because it had the brake lights and therefore she followed closely enough her seeing problems would not prevent her from that She did testify to that but she also testified that she does drive in the dark other times and places without sheriff's deputies But weren't those places like going to her mother who had Alzheimer's and she was driving on back roads and things like that She said she tried to stick to back roads She said there were fewer street lights but not that there were none She said that she went to grocery stores pharmacies and quote any kind of fast food any kind of fast food after dark as long as it was within about three miles of her house And to go back to that language it's got to be more than a moderate or intermittent interruption At most what she's saying here is not that I have pure night blindness and I can't walk at night or I can't drive at night at all I can drive at night just not everywhere comfortably in all conditions And to again just go back to that language in Wade or that reasoning in Wade if that's the standard then everyone who has difficulty driving You didn't have an objection to the jury instructions, right? I mean the instructions are fine, right? With regard to You don't have a claim on appeal about the jury instructions as far as you're concerned that it went to the jury inconsistent with existing law, right? That's right There's no instruction as far as I remember there's no instruction that says night blindness is a disability nor is there one that says asthma is a disability Right, but was there an instruction about it has to be more than moderate or intermittent? I think there was something along those lines But I think You agreed to whatever the instructions were You agreed to them, right? So I guess I'm curious about what It sounds like maybe you think there should have been a different instruction? I'm not sure I understand No, we don't think there should have been a different instruction We think we were We were given no choice based on the judge's Rule 50 rulings but to argue to the jury that this wasn't a disability But it is our position that that's not something that the jury ever should have decided in the first place We had to work with the jury instructions based on the claims that the judge allowed to go forward But you can't appeal a denial of summary judgment That's water under the bridge So what we're talking about is under these instructions was the jury verdict supported What could a rational juror have found in her favor? Not exactly, Your Honor We're challenging the judge's denial of our Rule 50 motion Okay We moved at the close of plaintiff's proof and then renewed that motion a number of times But the argument is as a matter of law she's not disabled That's correct Right? Well, yes Not that she's not disabled As a matter of law someone who makes out the allegations that she makes out is no different than the same plaintiff in the Wade case who as a matter of law was found not to be disabled That didn't go to a jury It wasn't a jury question The court found that that's simply not something that the Americans with Disabilities Act protects So you're relying on Wade which is an unpublished opinion of the circuit which preceded the amendments to the ADA That is correct, Your Honor But what I would submit did survive the ADA amendments is that language that it's got to be more than moderate It's got to be more than intermittent And here she at best provided testimony that she had a moderate difficulty driving In driving, no court has contested the notion that driving is not a major life activity She had to prove that she can't see that night blindness prevents her from seeing All the courts Even the courts that the appellee relies on are consistent that this is about seeing So seeing, if you have hypothetically really, really bad vision that can't be corrected but you can still see something Could you have an ADA qualifying disability? If it's more than moderate and if it's more than intermittent then I would say yes We don't dispute that there's some version of night blindness that could be so I see my time is out We don't dispute that there may be some version of night blindness that is so pervasive that even the Wade court would have said this is different But when someone only says I have difficulty seeing or difficulty driving that's not enough as a matter of law to get past a Rule 50 motion We ask that you reverse court the district court Thank you Thank you Good afternoon, your honors If you may please the court Steve Wilson for the appellee Miss Edwards The county's appeal here ignores the broad scale broad scope remedial scope of the ADA as amended and the expansive coverage provided by that 2008 amendment Do you agree that there are some conditions that just as a matter of law wouldn't qualify as a disability or an individual plaintiff their case wouldn't qualify? I believe, your honor given the 2008 amendments and the purpose behind that amendment with the expansive coverage and the focus on an individualized inquiry of any particular impairment I would be hesitant to say that any specific impairment per se cannot be a disability So everything has to go to a jury? Not everything has to go to a jury, your honor When building the case and in terms of when we reach the dispositive motion stage if for instance the proof is not being established that a major life activity is being affected or then Is there some level of night blindness that wouldn't qualify as a disability? Again, that's possible in the same way hypothetically if you had stenosis of the spine not always stenosis of the spine would qualify as an impairment It goes to the analysis of whether that would affect a major life activity under the very broad standard and under the ADA as amended I have a question Just real quick Are we doing just to judge Moore's question Is this a driving case or a seeing case? The plaintiff I could go the long winded way but it's multiple major life activities driving, seeing, reading concentrating the effect of on her special sense organs her eyes That was stated both in the pleadings at summary judgment It was in the pre-trial order It was in the jury instructions In fact, driving actually was not listed as one of the major life activities in the jury instructions So our position driving was one of the major life activities we did allege But we don't I thought eventually you went to focus on seeing That was primarily That's the case, Your Honor Driving I beg your pardon, sorry So do you allege that the night blindness affected her performance at the job site itself? At the job site itself? The record doesn't establish that There's nothing on the record which establishes she had a problem with that other than what I recall So your claim is that she had difficulty in her transportation to the job site She had difficulty driving In her transportation to the job site Driving in general, Your Honor Yes, and that would include Is there anything in the record about alternate forms of transportation she could have taken that would not have required her to drive? There's nothing in the record other than I could point to one of the job requirements was to own your own private vehicle for this particular job I don't want to misstate the record but I believe there may be the case that there was an inability to use public transport in that situation So is it your client's contention that it was a requirement of the job to drive to the job? It was a requirement of the job to own your own vehicle to drive That's correct, Your Honor Sorry Yeah, I'm just I realize the disability goes to major life activity but I'm wondering if the definition of major life activity somehow turns on whether or not the instance or circumstances in which the disability sets you back has to be actually something on the job or like for instance if you had trouble watching television or something that would not be part of the job that could be maybe in one sense be the disability if you consider watching television a major life activity but that's what I'm trying to get at because it seems like here I think you have to say it's part of your job to drive to the job Yes, Your Honor however one of the actual accommodations sought in this case which is a modification of her shift would have easily allowed her to still use her own vehicle and use it on the job Right Okay So she was terminated, right? Yes, Your Honor Because she said that she could not do the night shift because she could not get to the job That's the contention, Your Honor which was that she stated when confronted for the first time with this new shift where she'd have to be alone at the worksite drive home at 11 p.m. that she had night blindness necroptylia I probably mispronouncing that She stated this to her manager that she could get a doctor's note which it prevented her from seeing at night And she could perform all the other functions of the job during the daytime hours when she could drive to the site And she would be able to get there and back and do all of the other aspects of the job Correct? So she was qualified for the job Yes But needed an accommodation which she's claiming was a need for a reasonable accommodation Yes, Your Honor What about the asthma? I guess we didn't get into that Right In terms of the asthma Again, under the standard of review we apply for the directed verdict with the facts to be read most favorably in light of the non-movement Ms. Edwards and inferences drawn in her favor Ms. Edwards Undisputed testimony is that she suffered from asthma She had She was hospitalized in 2018 for three days She was on medication from that time onwards to help her breathe The one time she was left without one of her medications was during the period in September of 2021 when she made the request for an accommodation that was denied flat out What was the request for an accommodation then?  requested the day off from work so she could recover from the fact that that night as she told her manager she had been unable to breathe properly unable to sleep unable to move from room to room So your opponent's argument here on the driving and night blindness issue was that it was intermittent and I suspect that that would be the defense that they would make vis-a-vis the asthma that yes she had been diagnosed with asthma yes she had medication for the asthma but the one and only time that she had a problem with it is an intermittent time so why does it qualify as a disability under the ADA I think your honor that we would go to the statute there and the statute states that an impairment that is episodic is still a disability if it substantially limits a life activity when active and so then your position is that she requested a reasonable accommodation for that which was to not have to work the day that she was recovering from the asthma attack and she was denied the reasonable accommodation yes your honor so I'd also like to address well I have the time in terms of our position that the county has waived its argument regarding the regarded as definition of disability in this case did you present evidence of that to the jury yes your honor she was regarded as disabled because their whole approach here is to say she's not disabled at all well as we know regarded as definition doesn't require any analysis of whether there was an effect on a major life activity at all she in terms of evidence it was testified to that she had told her manager that she suffered from that condition that the manager despite denying the fact that knowledge of the condition told her superiors so there was knowledge by the  I would say evidentiary wise that establishes the regarded as claim I'd also point out again that the regarded as claim is in the jury instructions the agreed on jury instructions there was no objection to that in the jury instructions and the county failed to bring this issue up in its rule 50 motion completely failed to bring it up in the motion its excuse with all due respect to my friend its excuse was that the regarded as claim was not specified in the pretrial order now there is generalized language in the pretrial order talking about disability discrimination discrimination based upon night blindness when we came to the termination but I don't I see no case law where generalized language has precludes in this particular instance one way of proving disability discrimination the county does point to I  the Fritz case the verdict form says disability it doesn't really say regarded as the questions are she was disabled so I don't wasn't really given ultimately to the jury that way was it I would say the verdict form as you state your honor references disability discrimination the jury then gets to review the jury instructions how is it that      well for that reason I would argue that it's  can you point to any case where a court of appeals has upheld both the finding of disability under the ADA and a finding of regarded as disabled in the same way that  jury        and a finding of  as disabled in the  way that the jury has upheld both    liability based upon those two theories together no but your contention is that the jury verdict is supported by one or the other yes your honor yes your  in terms of good in terms of good faith the good faith element of retaliation I'll just point out in the limited time I have left is an inherently fact specific inquiry relying upon the credibility of witnesses classic jury question that in this particular case the county is essentially arguing for an inference of the lack of good faith based upon driving a car    months before she made the request for the accommodation but she's explained that she had a police escort that she had a co-worker with her and she was terrified while doing that it came to her attention then that this email that she had sent to     that by stating that miss Edwards immediate reaction was to specify her medical condition to her manager that that was ignored she was told to continue with the shift and as the following day yes she did send an  complaining about some of the  activity there those two requests in fact the email in question refers back to her previous conversation with the manager the day before those two requests are not mutually exclusive in any  maybe it could be maybe the county would be on stronger ground for an inference at that email before she made a request for an  perhaps but again that's not the facts in this case and at this stage the county as the movement of the rule 50 the motion is not entitled to that inference of dishonesty essentially and I see I have 20 seconds left I don't are there any other questions for me we're set thank you thank you your honor I surrendered the 12 seconds left of my time thank you may it please the  I've just got two brief points I'd like to touch on based on opposing counsel's  the first regards this issue of retaliation and whether her request was made in good faith counsel has argued just now that whether a request for an accommodation is good faith is a classic jury question and that's just not always the case we've cited two cases in our brief one from the 3rd circuit and one from the 5th circuit the 3rd circuit case is Salima versus Toby Hanna the 5th circuit case is Tabak Chinik versus Continental in each of those cases those circuits affirmed a grant of summary judgment on behalf of defendants where those defendants argued that a request for an accommodation was not made in good faith in each case the facts were similar to the facts here what the court found as a matter of  fact was that this employee asked for an accommodation with a factual basis that he or she knew was not true and that's what happened here Plaintiff Edwards one time told Suzy Suttle I can't see driving at night she then spent the rest of this trial listing off the places that she can see and does not drive at night that statement was categorically false this is not a question of credibility or of weighing the evidence as a matter of law this was not a good faith request as to the other point I would just briefly touch on the asthma claim this court has recently ruled in its Andrews versus TriStar Sports and I think is really important here the court said this plaintiff has showed that asthma can cause her difficulty but only in transient,  or extra strenuous circumstances so that or means if something is just transient under Andrews it's not necessarily a disability here Ms. Edwards ran out of her medication and she had a sleepless night that's the entirety of the evidence in the record she didn't testify about any major life activity that she could not do at work or otherwise was Andrews a published case? Andrews was not a published case so on the general point of transient what published case from a Sixth Circuit case off the top of my head I think the district court relied on  which was a district court opinion that sided to a number of other Sixth Circuit opinions what the Sixth  has said perhaps before Andrews it's not used the word transient but what it has said is that the asthma disability  enough to show an asthma disability thank you thank you both for the argument the case will be submitted